Not for Publication

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **TIFFANY ALEXIS JONES,** *on behalf of herself and those similarly situated*, | |
| **Plaintiff,** | Civil Action No. 19-13865 (ES) (CLW) |
| **v.** | **OPINION** |
| **JHPDE FINANCE I, LLC,** *et al.*, | |
| **Defendants.** | |

**SALAS, DISTRICT JUDGE**

Plaintiff Tiffany Alexis Jones, on behalf of herself and those similarly situated, brings this putative class action against Defendants JHPDE Finance I, LLC ("JHPDE"); Federated Law Group, PLLC ("Federated"); Douglas C. Jacobsen; and Bryan Manno (collectively, "Defendants") for violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* (D.E. No. 114 ("Second Amended Complaint" or "SAC")). Before the Court is Defendants' motion to dismiss the Second Amended Complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of standing. (D.E. Nos. 120 & 120-1 ("Mov. Br.")). Having considered the parties' submissions, the Court decides this matter without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the reasons set forth below, Defendants' motion is **GRANTED** and Plaintiff's Second Amended Complaint is dismissed *without prejudice*.

## I.     BACKGROUND

### A.     Factual Background

JHPDE is a debt buyer and Jacobsen is its chief executive officer. (SAC ¶¶ 6 & 8). Federated is a collection agency and Manno is its managing member. (*Id.* ¶¶ 7 & 9). On an

unspecified date, Plaintiff incurred a debt arising from one or more transactions for personal, family, or household purposes that became past-due.  (*Id.* ¶¶ 20 & 23).  JHPDE purchased the debt and transferred it to Federated for collection.  (*Id.* ¶ 27).  On July 6, 2018, "Defendants" mailed a collection letter to Plaintiff.  (*Id.* ¶ 32).  Plaintiff alleges that the letter was computer-generated by merging electronically-stored information with a form template and mailed to consumers throughout New Jersey, such as Plaintiff, from whom Defendants were attempting to collect a debt.  (*Id.* ¶ 42).

Plaintiff attaches the letter to the Second Amended Complaint, in which the balance is listed as $3,535.32.  (D.E. No. 114-1 ("Collection Letter")).  The Collection Letter is on Federated's letterhead.  (*Id.*).  The current creditor is listed as "[JHPDE]"; and the original creditor is listed as "Citibank N.A."  (*Id.*).  The Collection Letter provides that Plaintiff's account "has been sold to our client, [JHPDE]."  (*Id.*).

Plaintiff alleges that Defendants violated the FDCPA when it sent Plaintiff, and others similarly situated, the Collection Letter because JHPDE was not licensed to do so under the New Jersey Consumer Finance Licensing Act, N.J.S.A. § 17:11C-3.  (SAC ¶ 2).  Further, Plaintiff alleges that the Collection Letter violated the FDCPA because it "failed to correctly identify the current creditor to whom the Debt is owed since the creditor is not [JHPDE]."  (*Id.* ¶ 41).  Plaintiff does not allege who the correct current creditor is.

### B.   Procedural History

Plaintiff initiated this action on June 15, 2019.  (D.E. No. 1).  In November 2019, the parties engaged in settlement discussions, which ultimately proved unsuccessful.  (*See* D.E. No. 17).  On July 19, 2021, Plaintiff filed an amended complaint, which Defendants moved to dismiss for lack

of standing on September 1, 2021.  (D.E. Nos. 62 & 77).  Defendants' motion was terminated on February 15, 2022, pending resolution of discovery issues.  (D.E. No. 95).

On August 15, 2022, Plaintiff filed the Second Amended Complaint, in which she brings a single count against Defendants for violating the FDCPA.  (SAC ¶¶ 43 & 57–68).  On November 14, 2022, the parties attended mediation, which was unsuccessful.  (D.E. No. 121).  That same day, Defendants filed the instant motion to dismiss the Second Amended Complaint for lack of standing, which has been fully briefed.  (*See generally* Mov. Br.; *see also* D.E. Nos. 127 ("Opp. Br.") & 128 ("Reply")).

On May 10, 2023, Plaintiff submitted a notice of supplemental authority in further support of her opposition to the instant motion to dismiss, in which she cites the Third Circuit's recent decision in *Deutsch v. D&A Servs. LLC*, No. 22-1042, 2023 WL 2987568 (3d Cir. Apr. 18, 2023). (D.E. No. 132 ("Pl. Supp. Br.")).  On May 26, 2023, Defendants filed a response to Plaintiff's notice of supplemental authority.  (D.E. No. 133 ("Def. Supp. Br.")).

## II.    LEGAL STANDARD

A motion to dismiss based on lack of standing may be brought under Rule 12(b)(1) because standing is jurisdictional.  *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007).  A motion to dismiss under 12(b)(1) may either (i) "attack the complaint on its face" or (ii) "attack the existence of subject matter jurisdiction in fact."  *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).  On a facial attack, such as the instant matter, the court considers only the allegations in the complaint—viewing them in the light most favorable to the plaintiff— as well as documents referenced in the complaint and attached thereto.  *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012); *see also U.S. ex rel. Atkinson v. Pa. Shipbuilding Co.*, 473 F.3d 506, 514 (3d Cir. 2007).

Article III of the United States Constitution limits the jurisdiction of federal courts to actual "cases" or "controversies."  U.S. Const., art. III, § 2.  To establish Article III standing, a plaintiff must demonstrate (i) an "injury in fact"; (ii) a "causal connection between the injury and the conduct complained of"; and (iii) a likelihood "that the injury will be redressed by a favorable decision."  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992).  "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements."  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016), *as revised* (May 24, 2016).

To allege an injury in fact, "a plaintiff must claim the invasion of a concrete and particularized legally protected interest resulting in harm that is actual or imminent, not conjectural or hypothetical."  *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 272 (3d. Cir. 2016) (cleaned up).  A harm is particularized if it affects the plaintiff "in a personal and individual way."  *Spokeo*, 578 U.S. at 339 (quoting *Lujan*, 504 U.S. at 560 n.1).  "A 'concrete' injury must be '*de facto*'; that is, it must actually exist."  *Id.* at 340.

"Article III standing requires a concrete injury even in the context of a statutory violation."  *Id.* at 341.  A plaintiff may not allege a "bare" statutory violation, "divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III."  *Id.*  "Only those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court."  *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2205 (2021) (emphasis in original).  "If a statutory harm is concrete, no '*additional* harm beyond the one Congress has identified' is required."  *Morales v. Healthcare Revenue Recovery Grp., LLC*, 859 F. App'x 625, 626–27 (3d Cir. 2021) (emphasis in original) (quoting *Spokeo*, 578 U.S. at 342); *see, e.g.*, *Browne v. Nat'l Collegiate Student Loan Tr.*, No. 21-11871, 2021 WL 6062306, at *3 (D.N.J. Dec. 22, 2021) (dismissing complaint for lack of standing where plaintiff alleged only non-

licensure because such bare procedural violation does not establish concrete harm).

"'Concrete' is not, however, necessarily synonymous with 'tangible.'" *Spokeo*, 578 U.S. at 340. "Although tangible injuries are perhaps easier to recognize," the Supreme Court has stated that "intangible injuries can nevertheless be concrete," such as, for example, harm resulting from violations of the right to free speech or free exercise. *Id.*; *see also id.* at 342 (noting that the risk of reputational harm associated with libel and slander may be concrete); *Morales*, 859 F. App'x at 626 ("Intangible harms like privacy abuses can be concrete."). Relevant here, a substantive "informational injury" can also be considered a concrete intangible harm. *See Deutsch*, 2023 WL 2987568, at *3. Specifically, "an informational injury, where a plaintiff alleges that she failed to receive information to which she is legally entitled, is sufficiently concrete to confer standing" where the plaintiff alleges, among other things, an "adverse effect from the omission of accurate information." *Id.*

## III.   DISCUSSION

Congress enacted the FDCPA to address "abundant evidence of the use of abusive [or] deceptive . . . debt collection practices by many debt collectors." *Schultz v. Midland Credit Mgmt., Inc.*, 905 F.3d 159, 161–62 (3d Cir. 2018). Under the FDCPA, consumers have the substantive right to be free from "false, deceptive or misleading representation or means in connection with the collection of any debt." *See* 15 U.S.C. § 1692e. In the Second Amended Complaint, Plaintiff brings a single count against Defendants for violations of the FDCPA, specifically 15 U.S.C. §§ 1692e, 1692f, and 1692g.[1]  (SAC ¶¶ 43 & 57–68).  As noted above, Plaintiff alleges that

---

[1]      Section 1692e prohibits the use of false representation of the amount of any debt, the "threat to take any action that cannot legally be taken," or the "use of any false representation or deceptive means to collect" the debt. 15 U.S.C. § 1692e(2), (5), (10). Section 1692f prohibits a debt collector from using unfair means to collect any debt, including the collection of any debt that is not "permitted by law." 15 U.S.C. § 1692f(1). Section 1692g requires a debt collector to send written notice to the debtor of the name of the creditor to whom the debt is owed. 15 U.S.C. § 1692g(a)(1)–(2).

Defendants violated the FDCPA in two respects.  First, Plaintiff alleges that Defendants violated the FDCPA when it sent Plaintiff, and others similarly situated, the Collection Letter because JHPDE was not licensed to do so.  (*Id.* ¶ 2).  Second, Plaintiff alleges that the Collection Letter violated the FDCPA because it "failed to correctly identify the current creditor to whom the Debt is owed since the creditor is not [JHPDE]."  (*Id.* ¶ 41).  On the instant motion to dismiss, the parties' dispute turns on whether Plaintiff's allegations establish standing to sue Defendants.  For the following reasons, the Court concludes that Plaintiff has not established standing.

The Supreme Court has recently reiterated that "[t]o have Article III standing to sue in federal court, plaintiffs must demonstrate, among other things, that they suffered a concrete harm." *Ramirez*, 141 S. Ct. at 2200.  "Central to assessing concreteness is whether the asserted harm has a 'close relationship' to a harm traditionally recognized as providing a basis for a lawsuit in American courts—such as physical harm, monetary harm, or various intangible harms . . . ." *Id.* Here, the relevant inquiry is whether Plaintiff has sufficiently alleged an intangible harm that goes beyond a "bare" statutory violation—in other words, a harm that is concrete.  *See Spokeo*, 578 U.S. at 341.

"When determining whether an intangible, statutory harm is concrete, courts look to common law analogies and Congress's judgment."  *Morales*, 859 Fed. App'x. at 626; *see also Spokeo*, 578 U.S. at 341 (noting that "because Congress is well positioned to identify intangible harms that meet minimum Article III requirements, its judgment is also instructive and important").  Congress may "elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law."  *Lujan*, 504 U.S. at 578.  However, "Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and

purports to authorize that person to sue to vindicate that right.  Article III standing requires a concrete injury even in the context of a statutory violation." *Spokeo*, 578 U.S. at 341; *see also Morales*, 859 Fed. App'x. at 626 ("[N]ot all transgressions create standing—procedural gaffes that cause no 'concrete' injury fall short of Article III's requirements.").

Here, Defendants argue that Plaintiff's allegation of a statutory violation is insufficient to establish standing because she does not allege "how she was affected by the [Collection] Letter, much less that she suffered an injury in fact that is concrete." (Mov. Br. at 2–4).  Nor has Plaintiff alleged an injury that bears a close relationship to a traditionally recognized harm.  (*Id.* at 5–6). Plaintiff opposes.  In Plaintiff's opposition brief, she argues that the common law analogue applicable here is fraud; in her supplemental submission, she appears to alternatively argue that the appropriate common law analogue is informational injury.  (*See* Mov. Br. at 35–37; *see also* Pl. Supp. Br. at 1–2).  For the following reasons, Plaintiff fails to allege concrete injury under either theory.

The Court will first discuss informational injury.  "[T]he Supreme Court has repeatedly recognized . . . that an informational injury, where a plaintiff alleges that she failed to receive information to which she is legally entitled, is sufficiently concrete to confer standing." *Deutsch*, 2023 WL 2987568, at *3 (quoting *Kelly v. RealPage Inc.*, 47 F.4th 202, 211 (3d Cir. 2022)).  "[A] plaintiff has alleged an informational injury sufficient to give rise to standing if she alleges '(1) the omission of information to which [she] claim[s] entitlement, (2) adverse effects that flow from the omission, and (3) the requisite nexus to the concrete interest Congress intended to protect' when it created a legal entitlement to the information at issue." *Id.* (quoting *Kelly*, 47 F.4th at 214); *see also Duncan v. Sacor Fin., Inc.*, No. 22-2742, 2022 WL 16722236, at *4 (D.N.J. Oct. 19, 2022) (collecting cases in this district finding that an FDCPA plaintiff must allege a

downstream injury resulting from a misleading collection letter for a court to confer standing); *Valentine v. Unifund CCR, LLC*, No. 20-5024, 2023 WL 22423, at *3 (D.N.J. Jan. 3, 2023) (same).

In *Deutsch*,—the case on which Plaintiff relies in her supplemental submission (*see* Pl. Supp. Br. at 1–2)—the Third Circuit found that the plaintiff had Article III standing to bring a putative class action under Section 1692e of the FDCPA for providing misleading information in a debt collection letter.  *See* 2023 WL 2987568, at *3.  Similar to the facts here, the plaintiff in *Deutsch* received a debt collection letter from the defendant that she claimed was misleading because it omitted accurate information about her rights under the FDCPA.  *See id.* at *1.  The Third Circuit determined that the plaintiff "adequately alleged that she has suffered a concrete informational injury." *Id.* at *3.  Specifically, the Third Circuit found that the plaintiff had satisfied all three elements of informational injury, including that she had "suffered an adverse effect from the omission of accurate information . . . because she had alleged that it 'frustrated [her] ability to intelligently choose [her] response' and 'deprived [her] of [her] right to enjoy [the] benefits' provided by the FDCPA." *Id.* (alterations in original).

Here, Plaintiff has not alleged that she suffered any concrete harm.  All that she has alleged is that Defendants were not licensed debt collectors and that the Collection Letter "failed to correctly identify the current creditor to whom the Debt is owed since the creditor is not [JHPDE]." (SAC ¶¶ 2 & 41).  Consistent with Defendants' position (Def. Supp. Br. ¶ 2), Plaintiff does not sufficiently allege any harm associated with informational injury.  She does not allege that the failure to correctly identify the current creditor caused her to pay more than she would otherwise have paid, or that it delayed her repayment of the debt, that it harmed her credit rating, or even that it caused her distress, confusion, or wasted time.  Nor does Plaintiff allege that it frustrated her ability to intelligently choose her response to the debt collection letter and deprived her of her right

to enjoy the benefits provided by the FDCPA.  Nothing in the Second Amended Complaint suggests that, had Defendants correctly identified the current creditor, Plaintiff would be in any different of a position than she is in currently.  Indeed, *Deutsch*, on which Plaintiff relies, requires a plaintiff to allege that she "suffered an adverse effect from the omission of accurate information" to establish an informational injury.  2023 WL 2987568, at *3.  Without more, Defendants' non-licensure and failure to identify the current creditor to whom the Debt is owed is exactly the type of "bare procedural violation" that does not confer standing without evidence of concrete harm.  *See Spokeo*, 578 U.S. at 341.  Because Plaintiff has not alleged that she suffered any concrete harm, this case cannot proceed in federal court and must be dismissed on jurisdictional grounds for lack of standing.

Even if the Court were to view the common law analogue as fraud, Plaintiff still fails to establish standing because the harm traditionally associated with fraud requires some form of reliance.  Courts within this district have considered some deceptive debt collection practices to "bear a preliminary kinship to common-law fraud or fraudulent misrepresentation."  *Vaughan v. Fein, Such, Kahn & Shepard, P.C.*, No. 21-16013, 2022 WL 2289560, at *5 (D.N.J. June 24, 2022) (collecting cases).  "Both drive the recipient of false information towards a decision or action he would not otherwise take if not for the misrepresentation or falsity."  *Id.* ("[E]ven if the harm need only be similar in kind (but not degree), [p]laintiff must at least allege some form of reliance[.]"); *see, e.g.*, *Rohl v. Pro. Fin. Co., Inc.*, No. 21-17507, 2022 WL 1748244, at *4 (D.N.J. May 31, 2022) (finding no standing for FDCPA deception claim because "the Complaint fails to plausibly allege that [plaintiff] relied on [defendant's] representation").

Because Plaintiff has not alleged reliance on the Collection Letter, she has not established a concrete harm resulting from any fraudulent misrepresentation.  Without citing to caselaw,

Plaintiff merely states that "there is no justification for burdening the [P]laintiff with proving the elements of common law fraud such as reliance." (Opp. Br. at 36). She further states "that the FDCPA seeks to avoid the negative financial consequences" such as "bankruptcy, job loss, and marital instability," often associated with unfair debt collection. (*Id.*). However, as noted above, Plaintiff does not allege that she suffered any such consequences in the Second Amended Complaint, and Plaintiff may not amend the pleadings in her opposition brief. *See Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) (noting that it is "axiomatic" that a complaint may not be amended by a brief in opposition to a motion to dismiss). Therefore, Plaintiff lacks standing to bring a claim analogous to common law fraud because she has not adequately alleged facts resembling reliance.

The remaining cases on which Plaintiff relies do not lead to a contrary conclusion. For example, Plaintiff's reliance on the Supreme Court's decision in *Ramirez* is somewhat misplaced. (*See* Opp. Br. at 17 (citing 141 S. Ct. at 2207)). In *Ramirez*, a case based on the Fair Credit Reporting Act, a class of consumers filed suit after the defendant placed alerts on credit reports to indicate whether a consumer's name was a "potential match" with someone on a nationally maintained list of "terrorists, drug traffickers, or other serious criminals." 141 S. Ct. at 2200–01. Recognizing that it would not require an "exact duplicate" of a traditionally recognized harm, the *Ramirez* Court found that the alleged injury had a close relationship to the reputational harm associated with defamation, which requires publication of the harmful statement to a third party. *Id.* at 2208–09. Thus, the Court held that only those consumers who had showed that their credit files had been provided to third-party businesses had demonstrated "concrete reputational harm"; in contrast, those consumers whose files "were *not* provided to third-party businesses" had "not demonstrated concrete harm and thus lack[ed] Article III standing to sue." *Id.* at 2200 (emphasis

in original).  The Court reiterated that though "Congress may 'elevate' harms that 'exist' in the real world before Congress recognized them to actionable legal status, it may not simply enact an *injury* into existence, using its lawmaking power to transform something that is not remotely harmful into something that is." *Id.* at 2204 (quoting *Hagy v. Demers & Adams*, 882 F.3d 616, 622 (6th Cir. 2018)).  The Court went on to state "[o]nly those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court." *Id.* at 2205 (emphasis in original).  As such, while *Ramirez* reiterated traditional notions of standing relevant to concrete injury, the specific allegations there were akin to defamation, and so the Supreme Court held that publication to a third-party was required to establish concrete injury.  *See id.* at 2200.  As Defendants point out, Plaintiff does not allege that the misleading information was published to third parties, nor does she argue that the common law analogue is defamation.  (*See* Reply at 5).  Rather, Plaintiff posits either informational injury or fraud as the common law analogue.  Because Plaintiff's purported harm cannot be compared with the tort of defamation, *Ramirez* does not provide Plaintiff with a basis for standing.

The Court notes that some cases within this district, which were decided before the Third Circuit decided *Deutsch* and relied on pre-*Ramirez* authority, had held that mere receipt of misinformation constituted sufficient informational injury to confer standing under the FDCPA. *See Ozturk v. Amsher Collection Servs., Inc.*, No. 21-18317, 2022 WL 1602192, at *4 (D.N.J. May 20, 2022); *see also Velez-Aguilar v. Sequium Asset Sols., LLC, Inc.*, No. 21-14046, 2022 WL 18635633, at *3 (D.N.J. Jan. 18, 2022); *Bordeaux v. LTD Fin. Servs., L.P.*, No. 21-60243, 2021 WL 4438127, at *4 (D.N.J. Sept. 28, 2021).  The Court is not persuaded by Plaintiff's citation to such cases.  (*See* Opp. Br. at 19).  To start, such cases are not binding on the Court.  Moreover, the court in both *Velez-Aguilar* and *Bordeaux* acknowledged that the Third Circuit had yet to address

the issue of whether a plaintiff needs to plead actual harm beyond the receipt of misleading information to give rise to concrete injury.  *See Velez-Aguilar*, 2022 WL 18635633, at *3 (discussing FDCPA claims sounding in fraud and informational injury interchangeably and noting that "the Third Circuit has yet to directly address [the] issue"); *see also Bordeaux*, 2021 WL 4438127, at *4 ("While the Third Circuit has yet to address the issue of whether a violation of 15 U.S.C. § 1692e is sufficient to confer standing on consumers, courts in this district have [answered that question in the affirmative].").  The Third Circuit in *Deutsch* has since provided guidance that is sufficiently applicable to the instant matter.  Indeed, at least one district court within the Third Circuit has held that, applying *Deutsch*, a plaintiff must allege that the misinformation leads to some adverse effect to confer standing.  *See Nelson v. Bank of Am., Nat'l Ass'n*, No. 23-0255, 2023 WL 3569972, at *5–6 (E.D. Pa. May 18, 2023) (holding that consumers alleged concrete injury where receipt of creditor's letter containing misinformation resulted in repossession of their vehicles in a manner contrary to law).[2]

Moreover, Plaintiff argues that the Third Circuit in *Morales* found that a consumer has standing to bring an FDCPA claim "without showing any harm other than the violation of his statutory rights."  (Opp. Br. at 17).  However, Plaintiff misrepresents the decision in *Morales*. There, at issue was the defendant's statutory violation of the FDCPA's requirement to ensure that letters arrive in plain envelopes, prohibiting the use of "any language or symbol, other than the debt collector's address, on any envelope when" sending mail.  859 F. App'x at 626 (quoting §

---

[2]      In a footnote and without any analysis, Plaintiff similarly lists additional cases from this district that, as Plaintiff acknowledges, were decided *prior* to the Supreme Court's decision in *Ramirez*, as well as the Third Circuit's decision in *Deutsch*.  (*See* Opp. Br. at 18 n.1 (citing, *e.g.*, *Thomas v. Youderian*, 232 F. Supp. 3d 656, 669 (D.N.J. Feb. 3, 2017) (noting the "trend" in this district "in favor of finding concrete injury under the FDCPA where the amount or validity of the debt has been misstated").  Plaintiff does not provide any analysis as to how these cases might offer a persuasive basis in the law that supports her position, particularly in light of the Third Circuit's decision in *Deutsch* and the Supreme Court's decision in *Ramirez*, and the Court has not found any.  As such, the Court elects to rely instead on binding and persuasive precedent in reaching its decision.

1692f(8)).  Recognizing that "procedural gaffes that cause no 'concrete' injury fall short of Article III's requirements," the Third Circuit determined that the defendant had disclosed the plaintiff's protected information by means of a barcode on the envelope of the collection letter, and that such privacy abuse "was a concrete harm."  *Id.*  Therefore, the Third Circuit reversed the district court's order dismissing the action for lack of standing because the "envelope's barcode disclosed Morales's protected information, which caused a concrete injury in fact under the FDCPA."  *Id.* at 628.  Here, Plaintiff has not advanced any allegation regarding such a privacy abuse.  As such, *Morales* does not provide Plaintiff with a basis for standing.

Finally, Plaintiff's reliance on *Uzuegbunam v. Preczewski*, 141 S. Ct. 792 (2021) to support her assertion that "*every* violation of the law necessarily presumes an injury" is unavailing.  (*See* Opp. Br. at 19–20).  As Defendants point out (Reply at 5), the Supreme Court in *Uzuegbunam* discussed only the redressability element of Article III standing, not the injury element, in considering whether an award of nominal damages by itself could redress a past injury.  *See* 141 S. Ct. at 796–99 (holding that "an award of nominal damages by itself can redress a past injury" in First Amendment case brought by college students against campus police who prevented plaintiffs from speaking about their religion).  As such, that case was analyzed after an initial concrete injury—a violation of First Amendment rights—had been found.  *See id.* at 797 (noting there was "no dispute" as to whether plaintiffs had established concrete injury).  As explained above, Plaintiff has not alleged any tangible or an intangible harm that has "a close historical or common-law analogue" as necessary to proceed past the "injury in fact" requirement.  *See Ramirez*, 141 S. Ct. at 2204.  As such, *Uzuegbunam* is inapposite.[3]

---

[3]       In further support of their motion, Defendants cite to arguments made by Plaintiff's counsel in separate actions, which Plaintiff contests.  (*See* Mov. Br. at 4 & Opp. Br. at 12–13).  The Court notes that it does not rely on any such arguments in reaching its decision.

**IV.      CONCLUSION**

Based on the foregoing, Defendants' motion is **GRANTED**.  As the parties concede (Opp.

Br. at 31 & Reply at 7), dismissal is *without prejudice*.  An appropriate Order follows.

Date: June 30, 2023                                          */s/ Esther Salas*

                                                             **Hon. Esther Salas, U.S.D.J.**